UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA KOVITCH,

    Plaintiff,

v.                                                           Case No. 07-13446

UNUM LIFE INSURANCE COMPANY          HON. AVERN COHN
OF AMERICA,

    Defendant.

_____/

# MEMORANDUM AND ORDER
## GRANTING DEFENDANT'S MOTION TO AFFIRM ERISA DETERMINATION AND DENYING PLAINTIFF'S MOTION TO REVERSE ERISA DETERMINATION

I. Introduction

This is a benefits case under the Employment Retirement Income Security Act, 29 U.S.C. § 1001, et seq (ERISA). Plaintiff Patricia Kovitch is suing defendant UNUM Life Insurance Company, Inc. (UNUM)[1] claiming that UNUM wrongfully denied her long term disability (LTD) benefits under a Group Long Term Disability plan (plan) issued by her former employer and administered by UNUM. As will be explained, UNUM denied Kovitch's application for LTD benefits based on a pre-existing condition exclusion. UNUM says that this decision was not arbitrary or capricious and further says that Kovitch failed to exhaust her administrative remedies.

The matter is before the Court on UNUM's motion to affirm its determination and

---

[1] Kovitch also sued Jabil Circuit, Inc. (Jabil), her former employer. She later dismissed her claim against them.

Kovitch's motion to reverse UNUM's determination.² For the reasons that follow, UNUM' motion is GRANTED and Kovitch's motion is DENIED.

## II. Legal Standard

In Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609 (6th Cir.1998), the Court of Appeals for the Sixth Circuit held that summary judgment procedures may no longer be used in the Sixth Circuit in denial of benefits actions under ERISA. In Wilkins, the court of appeals decided a district court should adjudicate an ERISA action as if it were conducting a standard bench trial and, therefore, determining whether there is a genuine issue of fact for trial would make little sense. 150 F.3d at 618-19 (Gilman, J., concurring in part and setting out the judgment of the court of appeals on the issue regarding the summary judgment standard).

Accordingly, the Court will decide this matter under the guidelines set forth in Wilkins³ by rendering findings of fact and conclusions of law based solely upon the

---

² Kovitch did not file a formal motion; however, her counsel moved to reverse UNUM's determination on the record at the hearing on July 16, 2008.

³ The court of appeals' "Suggested Guidelines" are as follows:
1. As to the merits of the action, the district court should conduct a de novo review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly. The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.
2. The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part. This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.
3. . . . the summary judgment procedures set forth in Rule 56 are inapposite to ERISA actions and thus should not be utilized in their

administrative record. See Eriksen v. Metropolitan Life Ins. Co., 39 F. Supp. 2d 864 (E.D. Mich. 1999).

III. Analysis

A. Findings of Fact

The following facts are gleaned from the administrative record.

A. Relevant Plan Provisions

1. Pre-Existing Condition

The plan contains an exclusion for pre-existing conditions which is defined as follows:

> You have a pre-existing condition if:
>
> - you received medical treatment, consultation, care or services including diagnostic measures, or took prescription medications in the 3months just prior to your effective date of coverage; or you had symptoms for which an ordinary prudent person would have consulted a health care provided in the 3 months just prior to you effective date of coverage; and
> - the disability begins in the first 12 months after you effective date of coverage.

(AR at 67-68)[4]

2. Appeal Procedures

The plan also contains specific appeal procedures, providing:

> You have 180 days from the receipt of an adverse benefit determination to file an appeal.

---

disposition.
150 F.3d at 619.

[4] References to the Administrative Record are references to the Bates Stamp number of the LTD benefits claim file.

> . . .
> Unless there are special circumstances, this administrative appeal process must be completed before you begin any legal action regarding your claim.

(AR at 77-78)

### 2. Kovitch's Claim Process

Kovitch began employment with Jabil on April 12, 2004 as a "material planner." As part of her employment, she was eligible for disability benefits under the plan administered by UNUM. Kovitch became pregnant with her first child in December 2004. The child was due in August of 2005. At some point in March or April 2005, Kovitch began to experience pain in her buttock and leg. On March 10, 2005, she submitted a claim for short term disability benefits (STD) indicating that she was unable to work due to her pregnancy. In support of her claim, Kovitch submitted an Attending Physician Statement signed by Dr. David Spiteri, a pain specialist. Dr. Spiteri submitted a diagnosis of sacroiliitis[5] and prescribed physical therapy and Tylenol for treatment.

---

[5] According to Mayo Clinic's website:
Sacroiliitis is an inflammation of one or both of the sacroiliac joints, which connect your lower spine and pelvis.

The sacroiliac joints, also called SI joints, have a limited range of motion compared with other major joints in your body, such as your knee or elbow. With sacroiliitis, even the slightest movements of your spine can be extremely uncomfortable or even painful.

Sacroiliitis is difficult for doctors to diagnose, and it may be mistaken for other causes of low back pain, including sciatica, herniated disks and strained muscles. Sacroiliitis is often associated with a group of diseases called spondyloarthropathies, which cause inflammatory arthritis of the spine.

Treatment for sacroiliitis may involve a combination of rest, physical therapy and medications

http://www.mayoclinic.com/health/sacroiliitis/DS00726

He indicated Kovitch would be unable to work for one month, as of April 20, 2005.

UNUM approved Kovitch's STD claim. Kovitch says she was unable to work until June 23, 2006 when Dr. Spiteri apparently gave her clearance to work part-time. In any event, Kovitch's STD benefits expired on October 26, 2005. Kovitch then applied for LTD benefits.

On October 18, 2005, a Disability Specialist wrote Kovitch stating that UNUM had received her LTD claim and the initial evaluation process was underway. In the letter, UNUM explained that based on plan provisions and her date of hire, her effective date of coverage for LTD benefits was May 1, 2004. UNUM further explained that because her disability occurred within twelve months after the effective date, "a pre-existing evaluation must be completed." Finally, UNUM advised Kovitch to submit medical documentation in support of her claim.

On November 22, 2005, UNUM received a Supplemental Attending Physician's Statement from Dr. Spiteri. He reported a diagnosis of sacroiliitis and fibromyalgia When asked to describe Kovitch's subjective symptoms, he stated "SI joint pain."

As part of its pre-existing evaluation, UNUM received Kovitch's prescription drug records from a Rite-Aid drug store. The records show that on April 1, 2004, Kovitch had a prescription filled for sixty (60) 200mg capsules of Celebrex. The prescription was written by a Dr. Kelly Z. Ortwine. UNUM then obtained Kovitch's medical records from Associates of Family Medicine, P.C., where Dr. Ortwine practiced, dating back to 2003. The records included a June 16, 2003 office visit with a Dr. Shagrin. The notes from the office visit state in part:

5

HISTORY

She returns today, is having some pain in the right SI area. Her left hip and leg pain is better. She does take Celebrex once a day. She increased it to two a day but felt that she may have been having a reaction to it.
. . .
IMPRESSION
1.   Sacroliac pain
2.   Back pain
PLAN
1.   Return visit in about one month.

(AR at 451)

UNUM also obtained records from Beaumont Hospital in Troy. An x-ray report from April 21, 2003, shows sclerotic changes in the left SI joint. The "impression" of the radiologist was "left sacroiliitis." (AR at 456). An Outpatient Diagnostic Radiology Services" history dated April 16, 2003 shows Kovitch had low back pain and was there to rule out sacroiliitis. According to the information on the radiology check list, Kovitch was positive for past history of sacroiliac join pain. (AR at 458).

On December 29, 2005, UNUM wrote to Dr. Ortwine asking for assistance in providing information regarding Kovitch. UNUM specifically noted that Dr. Ortwine wrote a prescription for Kovitch on April 1, 2004 and asked for what condition had Kovitch been given the medication. On January 3, 2006, Dr. Ortwine responded to UNUM's request, stating "Left sacroiliitis 4/16/03 office visit." (AR at 497).

After UNUM received this information, it referred Kovitch's file to Dr. Joseph Sentef, a board certified physician in family medicine. Dr. Sentef reviewed the file, noting that office notes with Dr. Ortwine going back to 2003 reveal Kovitch had a history of sacroiliitis and had seen a Rhematologist in the past. Dr. Sentef was asked to respond to four questions put by UNUM directed at whether Kovitch has a pre-existing

6

condition. Dr. Sentef responded as follows:

1. During the pre ex-period from 2-1-04 through 4-31-04, for what conditions did claimant receive treatment or prescribed medication?
   The claimant was not seen in a doctor's office but according to medical records, Dr. Ortwine prescribed Celebrex for sacroiliitis and the patent had a previous history of 10 years of sacroiliitis.

2. What conditions have prevented and/or have been claimed to have prevented her from working since 4-21-05?
   To a certain extent pregnancy has prevented her from working. She had a 10 year history of sacroiliitis. There does not appear to be any worsening of her disease. She has had MRIs that have essentially been unremarkable and the claimant may have ankylosing spondylitis due to her positive HLA-B-27 but that diagnosis has not been substantiated.

3. Are conditions for which the claimant was treated during the pre-ex period related to those conditions that have prevented her from working since 4-21-05?
   Based on the facts, it appears the sacroiliitis has prevented her from working since 4-21-05 and this is something she has had over a 10 year period.

4. Are there any conditions that the claimant is currently claiming that are note pre-exiting conditions? If so, are the restrictions and limitations noted on the APS from 11-22-05 stating the claimant is unable to work through 1-16-05 supported for these conditions?
   There does not appear to be any current conditions that would not be considered pre-existing unless the claimant has a developing anklyosing spondylitis but again that cannot be substantiated. Restrictions and limitations that the patient cannot work appear to be excessive in nature. MRI has been essentially negative and there has not been much change in her disease from 10 years ago.

(AR at 556)

Dr. Sentef also sent letters to Drs. Ortwine and Spiteri asking for input regarding Kovtich's condition. Dr. Spiteri informed that Kovitch's fibromyalgia has not been the main issue concerning her overall functionality. Dr. Spiteri stated that "most of [Kovitch's] complaints have been related to SI pain related to pregnancy which has exacerbated this problem for her." (AR at 606). Dr. Ortwine responded that she had

7

not seen Kovitch for two years and that it was necessary to speak with Dr. Spiteri regarding her condition.

Based upon the file information, UNUM determined that the pre-existing exclusion disqualified Kovitch from receiving LTD benefits. On March 28, 2006, UNUM sent a letter to Kovitch advising her that the pre-existing condition period applicable to her claim was February 1, 2004 through April 20, 2004. The letter explained:

> You have submitted a claim with a primary diagnosis of sacroiliitis. This is as stated by David Spiteri, MD on the Attending Physician's statement of May 4, 2005, Your date of disability is April 21, 2005.
> On April 1, 2004, you filled a prescription for Celebrex which was prescribed by Kelly Ortwine, MD. On January 3, 2006, Dr. Ortwine indicated the Celebrex was prescribed for sacroiliitis.
> . . .
> According to information we received as part of your claim evaluation, you filled a prescription for Celebrex on April 01, 2004 which was taken for a condition that either caused, contributed to, or resulted in the condition for which you are now claiming disability. Since the prescription refill occurred in the pre-existing period, regretfully we cannot approve benefits for your claim.

(AR at 630-31). UNUM also advised Kovitch that if she had additional information to support her claim, such information must be received within 180 days of the date of the letter. UNUM further advised Kovitch that if she disagreed with UNUM's decision, she needed to submit a written appeal within 180 days. The letter directed where the appeal was to be sent.

On February 7, 2006, prior to the denial letter,[6] UNUM received a letter from attorney Danielle Sigler inquiring about the coverage decision. Sigler also mentioned that Kovitch had recently been diagnosed with Fibromyalgia, which she had never been

---

[6] Apparently, at some point prior to the March 28, 2006 letter, UNUM verbally informed Kovitch that her claim was being denied. Kovitch apparently sough legal counsel at that time.

8

treated for in the past. Sigler asked "to reach a disposition in this matter." (AR at 641).

UNUM responded to Sigler's letter on April 10, 2006. UNUM noted that the medical information referenced in Sigler's letter was already in the file. UNUM further noted that the letter did not specifically request an appeal of the denied claim and stated:

> If you intended this to be a request for an appellate review, please send us that request in writing within 5 days, and we will forward your file to the Appeals Unit.

(AR at 651)

UNUM did not receive any response from Sigler or Kovitch within the 5 days. However, several months later, on November 21, 2006, UNUM received correspondence from a different attorney, Thomas Moors, asking to be advised "of the eligibility status for long-term disability benefits." (AR at 659). UNUM responded by providing copies of earlier letters from UNUM to Kovitch and Sigler. About six months later, on May 16, 2007, an attorney from attorney Moors' office, Valerie Steiner, wrote UNUM requesting plan documents and information. UNUM responded to the letter on May 24, 2007, enclosing the requested information.

On August 17, 2007, Kovitch, through attorneys Moors and Steiner, filed the instant action.

## B. Conclusions of Law

### 1. Standard of review

The parties agree that the standard of review in this case is whether the denial of benefits was arbitrary and capricious because UNUM had discretionary authority to construe and interpret the policy. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S.

9

101, 115 (1989); Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 983 (6th Cir. 1991). This standard is the "least demanding form of judicial review." Administrative Committee of the Sea Ray Employees Stock Ownership and Profit Sharing Plan v. Robinson, 164 F.3d 981, 989 (6th Cir. 1999). A decision regarding eligibility for benefits is not arbitrary and capricious if the decision is "rational in light of the plan's provisions." Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir. 1988). See also Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 381 (6th Cir. 1996). Stated differently, "[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Davis v. Kentucky Finance Cos. Retirement Plan, 887 F.2d 689, 693 (6th Cir.1989) (internal quotations and citation omitted). See also Perez v. Aetna Life Insurance Company, (en banc) 150 F.3d 550, 555 (6th Cir. 1998). Although review pursuant to the arbitrary-or-capricious standard is thus extremely deferential, "[i]t is not, however, without some teeth. Deferential review is not no review, and deference need not be abject." McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 172 (6th Cir.2 003) (citations and internal quotation marks omitted). It "does not require [a court to] merely to rubber stamp the administrator's decision. Instead, we are required to review the quality and quantity of the medical evidence and the opinions on both sides of the issues." Glenn v. Metlife, 461 F.3d 660, 666 (6th Cir. 2006) (internal quotation marks and citations omitted), cert. granted, --- U.S. ----, 128 S.Ct. 1117, 169 L.Ed.2d 845 (U.S. Jan. 18, 2008) (No. 06-923).

2. UNUM's Did Not Engage in Unethical Conduct

Kovitch argues that UNUM engaged in unethical conduct because evidence is missing from the file, referencing a letter from UNUM employee David Doyton. She also

says that UNUM was on a "witch hunt" relative to her claim for LTD benefits. Neither assertion is correct. As UNUM explains in its reply brief, Kovitch had three files with UNUM, a STD benefits claim file, a LTD benefits claim file, and a file relating to a Life Insurance Premium Waiver claim. The later file is based on a provision in a life insurance policy Kovitch also had with Jabil which continues life insurance without payment of premiums for individuals who are disabled.[7] The Doyton correspondence relates to Kovitch's claim under the life insurance plan.

Moreover, the fact that UNUM approved Kovitch's claim for STD benefits and her claim under the Life Insurance Premium Waiver plan does not mean that it acted inappropriately with regard to her claim for LTD benefits. Importantly, neither the STD provision or the Life Insurance Waiver Provision contain an exclusion for a pre-existing condition. Thus, it was possible for Kovitch to receive some benefits under the STD plan and life insurance policy, but not under the LTD plan.

### 2. UNUM's Decision Was Not Arbitrary and Capricious

Kovitch says that UNUM's decision was arbitrary because her claim was based on her pregnancy. The Court disagrees. Kovitch's LTD claim is based on a disability due to sacroiliitis. This is confirmed by the Attending Physician's Statements of Dr. Spiteri. Although Dr. Spiteri later indicated Kovitch had a secondary condition of Fibromyalgia, he did not indicate this condition prevented her from working. Moreover, while Dr. Spiteri indicated that Kovitch's pregnancy exacerbated her condition, he did

---

[7] Apparently, UNUM discovered the existence of the Group Life Insurance Policy Kovitch had with Jabil during its review of her LTD claim. UNUM advised Kovitch of the policy and of her right to submit a claim under the policy, which she did.

not indicate that her pregnancy prevented her from working. Rather, the focus was on Kovitch's joint condition.

Under the plan, a pre-existing condition exists and is excluded from coverage, if the insured received medical treatment "or took prescription drugs or medicines" in the three months prior to the effective date of coverage. Here, the record clearly shows that Kovitch had a prescription for 60 capsules of Celebrex filled on April 1, 2004 which was prescribed by Dr. Ortwine. Dr. Ortwine indicated that the prescription was for sacroiliitis. Based on Kovitch's effective date of coverage of May 1, 2004, the prescription occurred within the three month "look back" window. Moreover, the record detailed above shows that Kovitch has a long history of sacroiliitis which began prior to her employment with Jabil and prior to her pregnancy. While her condition was exacerbated during her pregnancy, the condition existed prior to her pregnancy. Moreover, it is sacroiliitis, not pregnancy, which formed the basis for her LTD claim.

UNUM's actions reveal that it conducted a thorough and complete review of Kovitch's claim. UNUM informed Kovitch that her claim was subject to review for a pre-existing condition. In addition to obtaining the medical records and prescription records, UNUM requested a claim file review by Dr. Sentef, who opined as to whether Kovitch had a pre-existing condition. Dr. Sentef not only reviewed the file, but also inquired of Drs. Ortwine and Spiteri for further assistance, who essentially confirmed his conclusions. Based on the record, UNUM's conclusion that Kovitch's claim must be denied based on the pre-existing condition exclusion was correct. UNUM advised Kovitch of its decision, and the reasons for the decision, in a detailed letter.

Overall, the record contains sufficient evidence to demonstrate that UNUM's

decision was the result of a reasoned process which was neither arbitrary or capricious.

### 3. Kovitch Failed to Exhaust Her Administrative Remedies

UNUM also argues, as an alternative basis for affirming its decision, that Kovitch failed to exhaust her administrative remedies. "The administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." Miller v. Metro. Life Ins. Co., 925 F.2d 979, 986 (6th Cir.1991). "[T]he exhaustion requirement enables plan fiduciaries to 'efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions.'" Baxter v. C.A. Muer Corp., 941 F.2d 451, 453 (6th Cir. 1991) (quoting Makar v. Health Care Corp. of Mid-Atlantic, 872 F.2d 80, 83 (4th Cir. 1989)). The exhaustion requirement "is the law in most circuits despite the fact that ERISA does not explicitly command exhaustion." Ravencraft v. UNUM Life Ins. Co. of Am., 212 F.3d 341, 343 (6th Cir. 2000). Additionally, the fact that a plan makes administrative review permissive does not excuse a claimant from availing himself or herself of the review process before filing a federal suit. Baxter, 941 F.2d at 454. However, exceptions to the exhaustion requirement "include futility of the administrative process and inadequacy of the administrative remedy." Id. at 453 (citing Springer v. Wal-Mart Assoc. Group Health Plan, 908 F.2d 897, 899 (11th Cir. 1990)). "[T]he decision whether to apply the exhaustion requirement is committed to the district court's sound discretion." Id.

As noted above, the plan required Kovitch to file a written appeal within 180 days of an adverse decision. At no time did Kovitch comply with this provision. UNUM advised Kovitch in a letter dated March 28, 2006 of its decision to deny her LTD benefits

claim and advising her of her appeal rights.  Although UNUM received a letter from an attorney prior to the denial letter, the letter did not advise that it was an appeal. Moreover, when UNUM followed up with a letter stating that if an appeal was intended, it should be filed, Kovitch did not respond.  It was not until November 2006, well after the 180 days expired, that UNUM was contacted by a different attorney.  Notably, that attorney did not request an appeal, but rather inquired as to the status of her claim.  No further correspondence was received until several months later in May 2007 when Kovitch's attorney requested plan documents.

While Kovitch says that she was aware of the appeal time and attempted to comply with it, the record is clear that no appeal was made.  While Kovitch says, through affidavits which are not a part of the record, that an appeal was faxed to UNUM, there is no proof that this occurred.

Moreover, Kovitch's reliance on the fact that UNUM was still processing her claim in July of 2006 is misplaced.  As mentioned above, Kovitch also had a claim under the Life Insurance Waiver Premium and <u>that</u> is the claim which was still under investigation into July of 2006.  Although UNUM's LTD benefit claim file contains information from Dr. Spiteri relative to Kovitch's ability to work after her LTD claim was denied also does not mean that UNUM somehow waived the exhaustion requirement.  UNUM explains:

> In an effort to be complete, UNUM included information that it received from Plaintiff's treating physician, Dr. Spiteri, in connection with the Life Insurance Policy claim into her disability file.  UNUM was not working on her LTD file in July 2006, but, rather, was working on her Life Waiver of Premium file.  UNUM simply decided to include information is obtained while investigating one claim into the claim file of the other claim.

UNUM's reply brief at p. 3.  In short, Kovitch did not exhaust her administrative

14

remedies by filing a proper appeal of the denial of her LTD claim. However, given that the Court has considered the merits of Kovitch's claim, the fact that she did not exhaust her administrative remedies has not prejudiced her in this proceeding.

    SO ORDERED.


                                          s/Avern Cohn
                                          AVERN COHN
                                          UNITED STATES DISTRICT JUDGE


Dated: July 22, 2008


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 22, 2008, by electronic and/or ordinary mail.

                                          s/Julie Owens
                                          Case Manager, (313) 234-5160